The best case this morning is U.S. v. Ruben Porraz. Good morning, your honors. Gregory Mitchell, v. Mr. Ruben Porraz, police to court. Mr. Porraz entered a voluntary plea of guilty as being a member of the Latin Kings. He was charged with a RICO enterprise, but in this particular case, Judge, he was not charged with any overt acts whatsoever. There was the initial 32 count indictment where several individuals were charged and Mr. Porraz was not charged with any overt acts at all. There was a superseding indictment that followed, and Mr. Porraz again was not charged with any overt acts whatsoever throughout that RICO conspiracy. What he did, in fact, plead to, Judge, was that at the time of his arrest, he went in without counsel and proffered at a post-arrest statement to outline his extensive involvement in the Latin Kings from age 13 until the time of his arrest, and he clearly provided information in the details to which he could recall about his involvement from the age 13 to the time of his arrest. What transpired after that was essentially Mr. Porraz identifying clearly how his roles changed over the course of being a young juvenile at 13, being arrested, serving time, and then actually being convicted of drug conspiracy as part of the Latin King in 2002, being released from prison, and then for a period of about six years providing all of the requirements to get off probation and survive. He moved away from the 89th corner where he was raised with his family, tried to raise a family in Blue Island. He essentially stayed out of touch completely with the Latin Kings as much as he could. The factors indicate, however, that he ran into problems with his girlfriend later on in 2011 after being out for six years, was kicked out of his house, and essentially had to go back home to the street where he was at 13. And from there, being a much older person, the Latin Kings simply welcomed him back to the neighborhood and blessed him to become a member of the Latin Kings again. What he did, and he told the police, is that, I did do that because I had an alcohol and a drug problem, and it allowed me to essentially make money that I otherwise didn't have, and essentially act as sort of a senior person in the Latin Kings. He told that to the police. What we have then is that at the- Consigliere, I think they described it. I'm sorry? Consigliere, I think is the- Yes, he is. So the judge, the real question becomes, is that when he eventually pleads guilty, what is the relevant conduct? And that's what we allowed here. And what we have here is that by admitting, essentially, his extensive involvement over the period of his years, the district court looked at all of that and simply said, I believe that based on your admissions, you should get the added increase of the sentencing guideline range of attempted murder, even though there had been no attempted murder charges as an overt act in furtherance of the conspiracy or attempted murder charge in this particular case with him. The evidence was, is that he has been a 13-year-old and someone had been an enforcer at age 16 or 17 before he went to prison. Yes, he admitted, yes, I was involved in shootings. I had shot up people, but I had never hit anybody, and I don't know if I've ever been charged with hitting anybody. And the court simply says, well, that's enough for an attempted murder enhancement. Now- We're not talking about enhancement. I thought we were talking about the base offense level guideline, which base offense level guideline is appropriate, and the court used the conspiracy guideline. Well, the concern here, Judge, is that what we have is the RICO in particular, which talks about relevant conduct, and as I point out in my brief, is that there's essentially two parts that you have to have in terms of relevant conduct with respect to the RICO. And first is the foreseeability and the idea that you can foresee that this particular enhancement for the base offense is something that they're going to be involved in. And because of Mr. Perez's unique situation from 13 to 16 to now back at 89th Street and the hierarchy that was involved here, there were no murders or anything that he's involved in or even he could foresee given his role as an Inca in the 89th. What the judge did in this case, and properly so given what the state of the law is, with the other Latin Kings cases, this is a national problem. The Latin King gang problem is a national problem. And therefore, if you look at joining the Latin Kings and look at their at any point in time, 13, 16, 18, ever joins the Latin King, they are agreeing with the manifesto. If the manifesto say you protect your turf, if you do this. I thought in his plea agreement, he admitted that he committed several shootings of rival and other violence and that he gave these smash on site orders to the underlings in the gang. Not exactly, Your Honor. What he said was is that he had been in the gang since 13 and he understood as he was in the gang that in fact he did participate in up to five shootings that he recalls from age 13 to when he went to jail before 2002. But those aren't ever charged as attempted murder. There's no indication even with the state elements that shooting at anything, whether it's up in the air, at cars, whatever, are charges sufficient for an attempted murder. And the court clearly pointed that out. The district court said we're not considering that. What we're basically saying is that the Latin King enterprise itself has a manifesto and an agreement among the members that they're going to do these things. And it's enough that he got involved with the Latin Kings once he came back to 89th district that once he agreed to become involved, it doesn't matter anymore. Because if the Latin Kings nationally by their own manifesto say that murders and shootings and things are part of it, that's enough pursuant to Garcia. And I understand that that essentially what Garcia is. But when you look at those cases and every case that simply followed that analysis, the district court is left with the clear impression, because these are trials, this is evidence that comes in, they simply say, and I think the Seventh Circuit said so in the Bailey case that they cite in their brief, is that even though we want to avoid the tail wagging the dog to increase this conspiracy issue to enhance the base level offense, we have to be careful that essentially the preponderance of the evidence does not simply drag every single circumstance into this heightened level of sentencing guideline. And in this particular case, Judge, every single one of these Latin Kings or gang-related cases where this enhanced fundamental offense was raised, there were facts introduced by the individual trials, as well as the testimony and the like, where there was more than enough evidence to hold them accountable for seeability, for agreements, and the like. This case is more like the Eleventh Circuit cases where there were like limited pleas where the person expressly says, I'm admitting to what I've done in this case, but I had absolutely no knowledge about the other issues. I have not foreseen anything else. And so essentially in the Eleventh Circuit, as you well know, I point out in my brief, if the government wants to try to prove this relevant conduct, then it's beyond a reasonable doubt. And that's the standard here. Now, this court has not directly addressed it. It just simply affirms that relevant conduct as a basic only has to be proven by preponderance. But in the RICO matter, and in the RICO cases, the courts have been very careful to say, listen, we may think it should be a heightened standard. And I think that was the language used in Bailey, and I think that was the language that was also used in Garcia, where they said, we don't have to decide. We don't have to really look at the issue of whether we have to change the standard, because the evidence that was presented at the trial, evidence that was presented by the other co-defendants, the evidence that the court had to consider whether or not the person should be held considerable for this relevant conduct, was simply overwhelming. And in those particular cases, they didn't review it. What I'm saying in this case, Judge, is that this is one of those particular cases, given Mr. Peraza's history with the Latin Kings, that the district court had to be more particular with defining, essentially, what was the knowledge that he had with respect to this heightened position? You know, given the length of the charge conspiracy beginning in 1990, his conduct in the 1990s is appropriately considered as relevant to selecting the base offense, isn't it? Yes, I think, given the standard of what Garcia points out, it clearly could be. But the question is that if you take that 1990 conduct, was that evidence of an attempted murder enhancement as described? And clearly, if what that is, it isn't. It's aggravated conduct. It's an assault conduct. It's those kinds of things, not attempted murder, which is much more specific in terms of the middle state. So what I argued, and I think that what we have here, is that since 1996, with respect to how the court has looked at these enhancements, it's not simply to have a broad brush to say it's enough. They simply ask that there be more specific evidence. And I think the Supreme Court has handed down, has required the district courts to be more particular when you take an enhancement that is so significant to the level that it does in this particular case. And I ask to reserve my time for rebuttal, in case you have any questions. Yeah, your time has expired. Thank you. You should plead for extra time. Thank you. Yes, I did. Thank you. Mr. Corwin. Good afternoon, and may it please the court. Brian Corwin on behalf of the United States. Your Honor, the district court... I'm going to start you out, if I might, please. Sure, Judge. Because there's a lag. Anyway, why did you resist applying the guideline for assault, as opposed to conspiracy to commit murder? You know, I mean, he was just 13 when he joined the Latin Kings, and other than being a member of the gang, and knowing murders were possible, murdering others doesn't seem to be specific to his role in the gang. Judge, there are a few reasons why the guideline for assault wasn't applied. The first and most fundamental reason is that assault is not a predicate act under the RICO statute. 18 U.S.C. 1961 lists state offenses that qualify as RICO predicates, and guideline 2E1.1 of the sentencing guidelines governs the base offense level for any RICO defendant that's been convicted or pled guilty. And 2E1.1 says you apply either a base offense level of 19, or you apply the base offense level that would apply to the underlying racketeering act that was committed by the defendant. So assault would never be in the menu of options under that construct. Baked into your question, I think, is why the court may have held him responsible for the shootings that you referenced at a young age. And the answer to that related question is that the court did not expressly hold him accountable for those shootings. And this, I think, goes to the argument that defense counsel was just making. The guideline for attempted murder was not applied in this case. In fact, that's the guideline that the defendant has advocated for on appeal, and that's guideline 2A2.1. Instead, the guideline for conspiracy to commit murder was what the district court applied, and it didn't apply that guideline on the basis of those shootings that you referenced. It applied the guideline on the basis of the scope of the agreement that the defendant entered into according to the expressed terms of the plea declaration pursuant to which he entered his guilty plea. In that guilty plea, Judge, the defendant expressly admitted that as a Latin King, he and his co-conspirators were expected to fight, stab, shoot at, and kill their rivals. He admitted, and this evinces his understanding of the agreement, that as a young foot soldier in the gang, he himself shot at five people. But the agreement itself is what is driving the guideline selection, and is why the district court applied guideline 2A1.5, the conspiracy to commit murder guideline, in choosing the base defense level for Mr. Porras. Is it at all relevant that the instances of shooting at rival gang members that he actually admitted occurred much earlier than the acts charged as overt acts in furtherance of the RICO conspiracy? The timing of those shootings, Judge, I don't think changes the analysis in any way. The defendant had argued below that his participation in the conspiracy didn't begin until he assumed the role of Inca of the 89th Street Chapter. He made that argument in asking the court only to consider what he knew and what he did from that time frame going forward. Judge Kendall rejected that argument and said, no, you expressly admitted in your plea declaration that you joined the gang in 1993. But even if you set aside those shootings, his admissions about what he used, that those below him that he supervised, he expected, would use those guns to shoot at rivals who entered their territory. That by itself establishes that the scope of his conduct, or scope of his agreement rather, included and expressly contemplated the murder of rival gang members, and that by itself satisfies or supports the district judge's decision to apply guideline 2A1.5 for the conspiracy to commit murder. As I said, the numerous admissions that defendant made in his plea declaration expressly established that the defendant agreed that his conspiracy included a conspiracy to commit the murder of his rivals, and the court needed to look no further than the plain language of the plea declaration in affirming the district court's decision and in concluding that the district court committed no procedural error when it applied the sentencing guideline for conspiracy to commit murder. So unless the court has any other questions for the government, I would ask that the court affirm the sentence imposed by the district court. Thank you. Mr. Mitchell, your time has expired, but I'll give you a minute if you have anything to say in rebuttal.  The position that I've taken in the brief, and again, and I understand what the district court did, but the issue is that it was backed into as this issue with the conspiracy and the scope. The court, this court, back in time has talked about that there should be a distinction made when a person is a juvenile and what they allege to have joined at that particular time. And again, what we have here is a clear debarkation between Mr. Ruben Peraza's becoming Aladdin King at 13 and then when he comes back to the 89th and what he would join and what he understood his role was at that time. The evidence of record that was presented at this point did not indicate whatsoever that when he came back to the 89th after he had served six years, that he ever agreed or ever participated in or was ever in any meetings or any knowledge. He rejoined though. Pardon me? He rejoined. He agreed to participate, that's correct, and even took the Inka Road. But the question was whether or not what he knew about what the scope of what he was involved in at that time was the same as when he left. And my position is that he did not. Thank you very much, Judge. Thank you. Our thanks to all counsel. The case is taken under advisement and the court will be in recess until next week.